UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBERT PRADO-CEGUEDA,<br><br>Petitioner,<br><br>v.<br><br>PAM BONDI, Attorney General of the United States, in her official capacity, et al.,<br><br>Respondents. | Case No.:  26cv0481-LL-MSB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Wilbert Prado-Cegueda's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Return [ECF No. 4], and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTING** the Petition.

I.    BACKGROUND

Petitioner is a citizen of Mexico who unlawfully entered the United States several times between 2008 and 2009, but was apprehended and removed. ECF No. 4-1, Declaration of Daniel Negrin ("Negrin Decl."), ¶¶ 3–8. In March 2009, he entered the United States unlawfully and was apprehended. Negrin Decl. ¶ 8. In April 2009, he was released on bond. *Id.*

1

In June 2013, Petitioner's removal proceedings were dismissed so that ICE could reinstate his prior removal order. *Id.* He was then taken into custody. *Id.* In July 2013, he was found to have a reasonable fear of persecution, and in September 2013 he was placed in withholding-only proceedings. *Id.* ¶ 9. In January 2014, he was granted a bond in the amount of $1,500 and released. *Id.* In October 2015, Petitioner's withholding-only proceedings were closed upon agreement of the parties. *Id.* ¶ 10.

In October 2016, Petitioner's withholding-only proceedings were re-opened following his conviction in 2015, with time served, for misdemeanor vehicular manslaughter. *Id.* ¶¶ 11–12; Pet. at 38. In December 2016, he was granted a $1,500 bond by the immigration judge and released. *Id.* ¶ 12.

Petitioner was granted withholding of removal to Mexico on November 10, 2021. *Id.* ¶ 3; ECF No. 4-2 at 12. Both parties waived appeal, so the removal order became administratively final the same day. ECF No. 4-2 at 12. On about May 16, 2022, Petitioner's bond was canceled, and he was placed on an order of supervision. Negrin Decl. ¶ 14. He complied with all conditions of release and attended all scheduled immigration check-in appointments. Pet. ¶ 41. Prior to his re-detention, Petitioner lived with his lawful permanent resident partner and their three United States citizen children, aged ten, seven, and one year old. *Id.* ¶ 42.

On October 16, 2025, Petitioner was at a scheduled immigration check-in appointment when ICE officers served him with a Form I-200, Warrant for Arrest of Alien and a Notice of Revocation of Release and re-detained him. *Id.* ¶ 43; ECF No. 4-2 at 4; Negrin Decl. ¶ 15. Immigration and Customs Enforcement has no record that Petitioner was provided an informal interview. Negrin Decl. ¶ 15. ICE has been, and is still, trying to find third countries that may be willing to accept Petitioner for removal. Negrin Decl. ¶¶ 16–17.

On January 5, 2026, an immigration judge denied Petitioner's release on bond on the basis that the court lacked jurisdiction under 8 U.S.C. § 1231(a), which governs the detention, release, and removal of noncitizens ordered removed. Pet. ¶ 46.

26cv0481-LL-MSB

On January 26, 2026, he filed the instant Petition, alleging that his re-detention without notice and an opportunity to be heard violates the Fifth Amendment's Due Process Clause and the Immigration and Nationality Act. *Id.* ¶¶ 51–67.

## II.     LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.    DISCUSSION

### A.     Jurisdiction

Respondent contends that as a threshold matter, Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g). ECF No. 14 at 3–4.

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Respondent argues that Petitioner's claims are barred because they arise from DHS's decision or action to execute removal orders, which removes district court jurisdiction. ECF No. 4 at 4.

The Court finds § 1252(g) does not bar its jurisdiction over Petitioner's claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney

General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). Petitioner is not challenging the execution of his removal order but is instead challenging ICE's compliance with detention regulations and due process protections in revoking supervision. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001) (confirming that 28 U.S.C. § 2241 confers jurisdiction on federal courts to review custody challenges for individuals with final removal orders); *Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does not limit the Court's jurisdiction in this matter.

## B.    Due Process Clause

Petitioner challenges his detention as unlawful based on ICE's revocation of his release without providing the required notice and opportunity to be heard, violating both governing regulations and the Fifth Amendment's Due Process Clause. Pet. ¶¶ 51–67; ECF No. 5 at 7–8.

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances,

26cv0481-LL-MSB

to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted).

The detention and release of noncitizens that are subject to a final order of removal are governed by 8 U.S.C. § 1231. This statute provides that "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). It also authorizes the detention of noncitizens during this removal period. *Id.* § 1231(a)(2). However, once that time passes and "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released on supervised release. *Zadvydas*, 533 U.S. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the [noncitizen] does not leave or is not removed within the 90-day removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Once ICE releases a noncitizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). Sections 241.4 and 241.13 of the Code of Federal Regulations govern the release and the revocation of such release of noncitizens who are subject to a final removal order. *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025). If ICE chooses to re-detain a noncitizen after they have been released, the noncitizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the

26cv0481-LL-MSB

notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i)(3). Thereafter, the noncitizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

The Court finds that having been previously released on an order of supervision for over three years, Petitioner has a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews*, 424 U.S. at 334–35. To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that the government's revocation of Petitioner's order of supervision without providing him a reason for revocation or giving him an opportunity to be heard denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his order of supervision. *See Zadvydas*, 533 U.S. at 690

26cv0481-LL-MSB

("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [Due Process] Clause protects."); *Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of Petitioner's significant liberty interest through the procedures used is high as Petitioner's order of supervision was revoked without providing him a reason for revocation or giving him an opportunity to be heard. In the Notice of Revocation of Release that Petitioner received at the time he was re-detained, it states that the revocation decision was "made based on a review of your official alien file and a determination that there are changed circumstances in your case." ECF No. 4-2 at 16. The notice does not identify what the changed circumstances are, making this a notice in title only and deficient for the purpose of due process. As previously noted, the regulations state that a noncitizen will "be notified of the reasons for revocation" and be provided "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i)(3). Because Petitioner was not notified of the "changed circumstances," he could not have responded to them in any meaningful way. *See Nouri*, 2025 U.S. Dist. LEXIS 171809, at *14 (C.D. Cal. Sep. 3, 2025) ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the Notice does not actually state any reasons for revocation." (quoting 8 C.F.R. § 241.13(i)(3))). Furthermore, Petitioner was never given an initial informal interview and was thus denied an opportunity to be heard. The risk of erroneous deprivation of Petitioner's liberty is substantial when the government has not

26cv0481-LL-MSB

identified the reasons for revoking supervision and Petitioner has had no opportunity to determine whether there is any valid basis for his detention. *See Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a hearing before a neutral decisionmaker, is also substantial.

Third, the government's interest in re-detaining Petitioner immediately without notice of the reasons and an opportunity to be heard is low in this case. Respondents claim that Petitioner was re-detained for purposes of executing his final removal order, but it has been over five months without even the identification of a third country, so his removal could not have been considered likely to occur in the reasonably foreseeable future at the time of his re-detention. There is also no indication that providing notice of the reasons and an opportunity to be heard would be fiscally or administratively burdensome on the government.

Therefore, because Respondents detained Petitioner by revoking his order of supervision without notice of the reasons and an opportunity to be heard in violation of the Due Process Clause, his detention is unlawful and he is entitled to be released. *See, e.g.*, *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1166 (S.D. Cal. 2025) (finding that ICE's failure to provide the petitioner with a meaningful opportunity to contest the revocation of his order of supervision through an informal interview violated both his due process rights and agency regulations); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful).

Additionally, the Court finds ICE's failure to follow its own regulations also constitutes a due process violation. "Both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 were intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release . . . .'" *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (citation omitted). "A court's duty to enforce an agency regulation is most evident when

compliance with the regulation is mandated by the Constitution or federal law." *United States v. Caceres*, 440 U.S. 741, 749 (1979). Therefore, the failure to provide Petitioner with the regulation procedures intended to protect his due process rights is not only a violation of the regulations, but also of the Due Process Clause. *See Brown v. Holder*, 763 F.3d 1141, 1149 (9th Cir. 2014) (noting that "constitutional rights were implicated when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights." (internal quotation marks and citation omitted)); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("[B]ecause ICE did not follow its own regulations [to provide an informal interview] in deciding to re-detain [the petitioner], his due process rights were violated, and he is entitled to release.").

Respondents argue that because Petitioner knew he was subject to a final order of removal, he was not prejudiced by the lack of an informal interview or any other alleged regulation violation—and thus cannot establish that a constitutional level violation occurred—but the Court is not persuaded. ECF No. 4 at 10. "[T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) [ ] those that do not." *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). "A violation of the first type of regulation . . . implicates due process concerns even without a prejudice inquiry." *Id.* (holding that where "the regulatory violation . . . constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation"). As the regulations here protected Petitioner's fundamental due process rights of notice and an opportunity to be heard, no showing of prejudice is necessary to establish a due process violation. *See id.*; *Kerota v. Noem*, No. 3:26-CV-00140-RBM-BLM, 2026 WL 183858, at *3 (S.D. Cal. Jan. 23, 2026). Even if that were not the case, Petitioner was prejudiced by the deprivation of due process rights that the ICE regulations are meant to protect.

/ / /

/ / /

26cv0481-LL-MSB

*See Hernandez*, 872 F.3d at 994 ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." (internal quotation marks and citation omitted)).

**IV.   CONCLUSION**

For the reasons above, the Court **ORDERS**:

1.   Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.[1]

2.   Respondents shall immediately release Petitioner from custody subject only to the conditions of his previous order of supervision.

3.   Prior to any re-detention of Petitioner, Respondents must comply with the procedural safeguards set forth in the relevant regulations.

4.   The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated:  March 10, 2026

Honorable Linda Lopez
United States District Judge

---

[1] In the Petition's prayer for relief [Pet. at 16], Petitioner requests attorney's fees and costs under the Equal Access to Justice Act, which the Court **DENIES without prejudice**.

26cv0481-LL-MSB